Case 22-3101, United States v. Moss, counsel, please. May it please the court, counsel, Jake Rochebeau on behalf of the appellant, Roger Moss. Counsel, I hate to interrupt you just when you get started, but I want to be sure we're all on the same wavelength as to what the standard of review is that we've got here. As I've been reading, it looks like your issues one, two, and four are all under plain error, but the government confessed plain error on the last issue. Are we all straight on that? So I think there's even more mixing and matching, actually. So the first issue is on plain error, the plain-franks issue. The second is the constitutionality of 922G3. That is a preserved as applied challenge, but the facial challenge would be on plain error. Now, that's the 922G3. You're saying that's number two? Yes. Okay. Go ahead. And then issue three is two evidentiary errors, which are on plain error, and issue four, the forfeiture issue, is also on plain error, but the government has conceded it. Okay. I'm sorry, but I need to be sure we're all on the same page. No, I'm glad to be on the same page. Thank you. So Mr. Moss does raise four issues. One of those, constitutionality of 922G3, is actually the sole issue raised in this court's next case on this court's calendar, so I intend to focus my oral argument elsewhere, starting with the plain-franks issue. A defendant is entitled to an evidentiary hearing to prove an alleged Franks violation if he makes a substantial preliminary showing as to two elements. First, that the search warrant affidavit contains a reckless misstatement or omission, and second, that the misstatement or omission is material. Because Mr. Moss has clearly made the requisite substantial preliminary showing, he's entitled to a limited remand for an evidentiary hearing. As for the materiality, it is well established that probable cause to search a person's residence does not arise based solely on probable cause that the person is guilty of a crime. Rather, some additional evidence must link the suspect's home to the suspected criminal activity. Let me ask you this. So, in this case, the cops start watching your client, and they, I mean, for lack of a better term, have a hunch that his house is where he's keeping the stuff. But in trying to confirm that through trash and surveillance, they're unable to confirm it. I mean, is that fair so far? Sure. Okay. And then they get a GPS warrant, and they start tracking him. And in hopes that they're going to find where he's keeping the drugs that they believe he's dealing. But after substantial monitoring, they're unable to tie him to another place where he might be keeping narcotics. This is all according to affidavit, yes. Right, okay. Now, is it not fair for them to use deductive reasoning at that point to say, look, we've run the GPS on him, we've tracked him, we've talked to people where he was stopping. They claim to be buying drugs from him. We cannot, through these means, find that he's been going to a, quote, stash house, close quote. And because of that, the only logical conclusion is he's got to be keeping these drugs in his house. So we're going to ask for a warrant. And that's basically the basis on which they ask for the warrant to search his house, right? Yeah. And I agree with that characterization that it's 100% valid to use that logic and reasoning to establish probable cause to search the house initially on the face of the affidavit. I would not agree that that's the only logical place that you could keep it. Right. But it's certainly permissible inference to draw to establish the nexus with the house. Okay. And that's all on the face of the affidavit, and we're not challenging it. Right. But your beef is, is that they either recklessly or with some type of intent to fool the issuing judge, their unsuccessful efforts before to determine that the house was the place where he was keeping it? That's one aspect of it. Okay. That's, and that would be actually the only thing that was preserved below. That was litigated pretrial, and the district court rejected that. And I'm not challenging just that as a preserved Frank's error. What I am arguing is that that, in combination with the testimony elicited at trial, specifically Officer Vandelli's testimony, that they were aware that a storage unit might be involved in his drug trafficking. So our argument is that the affiant was in fact aware of another, of the existence of a potential stash house, namely this storage unit, and omitted that critical fact from the affidavit. And as you just explained, the only way they established a nexus between the home and the alleged drug trafficking is by this sort of process of elimination. We can't find a stash house. Therefore, the most logical place he must be keeping it is his home, and that's perfectly acceptable. That qualifies as the requisite additional evidence. So would it be, would you agree then that if in the affidavit they had said, we tracked him, he's dropping drugs off at all these places, we've heard that he might have a storage unit, but we haven't located it. But in our training and experience, we, you know, believe it must be in his house because of the pattern we're seeing. And so that gives us probable cause. We want a warrant. What's your case look like then? It would look bad. Isn't that essentially what they did when they put the register on the car? They determined that he did not regularly go to another location in order to get drugs that he then proceeded to sell, which they could confirm. So aren't they actually telling the court that they can negate the possibility that the drugs are being regularly obtained in another location? Right, and that's what we're challenging. We're saying that the omission of their knowledge of a potential, we're saying that the officers were aware through their investigation of a potential stash house, and they omitted that from the affidavit. And the only connection they had, the only nexus to the home was, well, we don't know where else it could be. We can't find a stash house. But no, they have evidence that it, I mean, why is it material? Because they had evidence that he was not going to some other location before he made his drug deals. Well, and that's part of what we're challenging. I think the omission of their knowledge of another potential stash house where they say we were aware that this storage unit was potentially involved because we followed him there and we think it might be involved in his drug trafficking activity. That is a material omission that undermines the basis of probable cause to search the home because the only basis they have was we can't find a stash house. Except that now, based on the trial testimony, we know, oh, we know that they knew at the time, and he specifically says we were aware during the course of our investigation that this storage unit might be involved. Well, so let's flesh that out a little bit. So, and I'm going to let you move on to some of your other arguments. I don't mean to take it all up. That's fine. I mean, doesn't it, I mean, it sounds to me like a false lead. Somebody told, at some point during the investigation, somebody suggested to them there's a storage unit he might be using. But they could never find it. So does it matter? I mean, is it material that they didn't say we had a lead that there could be a storage unit, but we couldn't ever find it? I mean, why does that matter? I mean, that sort of seems to me to support the idea that it's in his house. I don't know where your Honor is getting this. We heard a rumor that he had a storage unit, but we couldn't find it. All we know from the trial testimony is that we were aware that he had, we were aware that this storage location might be involved because we followed him there one time during our surveillance. Okay, I'm ad-libbing. Okay. But I think it's important. I mean, if they had detailed their investigation and said, we heard a rumor that he might have a stash house, but we can't find it. And this is another thing that your Honor said, which is why I said our case would look a lot worse if your hypothetical were true. Based on our expertise and experience, we know that drug traffickers are likely to keep evidence of drug trafficking in their homes. And since we can't find this rumored stash house, we think the most likely place where he would store evidence in his home. If that were the case, I wouldn't be here today. But critically, I know in the case of drug trafficking, this court has said that, you know, additional evidence can take the form of an affiant's expertise and experience that drug traffickers in their experience often keep evidence of drug trafficking in their home. And that's enough to establish an excess. Critically, that wasn't said here. The only representation that the government was relying on to say that they did is that is just a generic line at the end that appears at the end of every single warrant affidavit, which is, for these reasons above, I think we're going to find evidence of, I think we've established probable cause and we will find evidence of the crime in this location. But that's not, that's just a conclusion, excuse me, that it's up to the magistrate judge to draw. And just putting that generic line in there does not substitute for what this court has approved of, which is the affiant saying that based on their knowledge of experience, drug dealers in general are likely to store evidence of drugs there. Are you saying that the officers did not, knew not only that there was an extra storage unit, but also they knew his location because they had followed him? Yes. But when they monitored his car, that was not on the route that was routine prior to him making drug sales, is that correct? Well, we don't know that because they didn't mention it in the affidavit. So what we're, our position is that the affiant did know that there was this potential stash house and he recklessly or intentionally omitted it from the affidavit in order to establish an access to the home. What if they had said, we've tracked him, we've followed him, we've been unable to specifically confirm where he's keeping his drugs. But from the pattern and practice we're seeing, we're confident in our training and experience, I'm going to throw that in on you again, that it was either the drugs are either being kept in his home or in storage unit 443 at the so-and-so storage units and got a warrant for both places. I think bringing their training and experience, I think if they had included the line that they would explain that in their training experience, people suspected of drug trafficking are likely to keep them in both places. I could see that. But what if they don't say that? Then then I don't think so. I mean, this court is extremely protective of the home and requiring a specific nexus to the home. In Mora and in Roland, they've emphasized that it's it's not enough to where the home is just one of many other places that it could pot that the evidence could possibly be found. That's not enough. You have to explain why the home is the place that it's more likely to be found than any of the other unlimited areas. And here we have if you have a specific other location where it's likely to be found, then I don't think you've established the nexus to the home without some other additional evidence or explanation based on their training and experience expertise. If I could reserve the remaining of my time for sure. Morning, Your Honor. May it please the court. Andrew Nolan, behalf of the United States. I'd like to start as well with the Franks issue that Mr. Moss raises about the affidavit in support of the search of his apartment. He highlights three aspects of the trial testimony that he claims established that officer more recklessly or knowingly omitted material information from the warrant. But he has not made a substantial preliminary showing, much less one that was so exceptionally strong that the district court would have been obligated to revisit its pretrial Franks decision, absent any motion or objection by Mr. Moss at trial. And so I just want to emphasize this case is on plain error, and therefore the showing must be exceptionally strong. And to start with each piece of this testimony, I want to emphasize the storage unit testimony, which Mr. Moss focused on this morning. And I point this court specifically to page 690 of the third volume of the record. And that's where there is two statements by Officer Vandaley at trial about the storage unit. And importantly, he says that officers were aware of a storage unit that might be involved, and they once followed Mr. Moss to that storage unit. That's the sole testimony there about the storage unit. And importantly, what's absent from that testimony is any indication that officers thought that Mr. Moss went there or observed him go in there regularly, with the regularity that would be required to imply that it was perhaps serving as a stash house for his drugs. And importantly, as the affidavit went through in detail, officers had observed with the GPS tracker, Mr. Moss going to upwards of 40 different businesses and parking lots and residences over a multiple week period, making short stops of two to four minutes at a time, and had failed to find any evidence that any of those places were a stash house. And I think that's consistent with the specific information that Officer Vandaley gave at trial about a particular location here, a storage unit. And I just emphasize that there's nothing to imply that the storage unit, based on the testimony that was given at trial, that the storage unit was visited regularly. And importantly, this court in Moses explained that even on a preserved Franks challenge, the district court is not required to make inferences in the light most favorable to the defendant. To make a substantial preliminary showing, you must show a substantial likelihood that the magistrate judge would have been required to draw a different inference. And so here, I just think based on the testimony given at trial, there's no indication that the magistrate would have been compelled to find that officers knew of a stash house that was unmentioned in the affidavit. Judge Carson, I think we agree. We apparently did know the location of it because they followed him there once. That's correct. It's not a case of there might be other places, but we don't know where they are. We've got some hint in the record that maybe he had a stash house, and we in fact followed him to one. That wasn't in the affidavit. That's right, Your Honor. Again, the testimony didn't refer to a stash house. It referred to once, once following Mr. Moss to this location. But the affidavit similarly didn't detail all 40 businesses and residents. Did they not have information that that one occasion was not to sell drugs but potentially to get drugs out to sell? So we don't know based on the testimony given at trial. They simply know he went to a location. There's nothing in this record that shows he had any knowledge of what he did at that location. That's right. It's unfair. It wouldn't be correct then to say that they knew he on one occasion did go to a separate stash house. They have no proof, any evidence that it was in fact a stash house. That's right, Your Honor. I fully agree with that, and I think that's why on plain error in particular, this court can't take that one sentence at trial and find that it would have shown a substantial preliminary showing to warrant a Franks hearing. Again, the affidavit did not list out all 40 different places that officers followed or saw in the GPS tracker Mr. Moss went to, but didn't see any indication he was staying there long enough to retrieve drugs or regularly visiting there before making different stops to sell drugs. And so I just think that that testimony doesn't supply even a reasonable inference that officers thought it was a stash house. Now, Judge Carson, I think we agree entirely with what you and defense counsel agreed to, that the district court before trial considered the exclusion of a lot of the evidence about the officer's inability to physically surveil Mr. Moss' home, see its front door, see its garage, get information from the trash to tie drug trafficking to his home. And the district court considered all of that. And at pages 263 and 264 of its ruling, that's on volume three of the record, the court explained why once officers had all of the GPS data and specifically kind of excluded all other locations that would have been potential places for the drugs, they had a reasonable inference that the home was the only remaining place. And so to succeed on his plain error challenge, Moss would have to show something about the trial testimony that changed that calculus or made that implication substantially unlikely. And I think there's just nothing with respect to officers' statements about the trash pull or anything else that would have made a different calculus. And last, with respect to the nexus point, we can test Mr. Moss' claim that there's nothing other than an officer's blanket assumption that in his training and experience, there would be reason to think a drug trafficker would have drugs in his home. That would be enough under this court's decision in Bigelow, as would be the magistrate judge's reasonable inference of her own. But I would point the court specifically to page 130 to 131, where right after Officer Moore references the officers following Mr. Moss and not being able to find or looking at the GPS data and not being able to find any other evidence of a stash house or the like, he then goes on to say in the very next sentence, I therefore believe apartment number 603 contains evidence of illegal drugs, cocaine, instrumentalities used to package and traffic drugs, and other paraphernalia. And that's similar with page 122 earlier in the affidavit, where he invokes his training and experience, and similarly says he believes, based on all the information officers have, that the house would contain evidence of drug trafficking. So there's more than just either the magistrate judge's conclusion or even kind of a generalized statement. There's a very specific statement tying the evidence officers had to the house. I'm happy to address the other issues if this court has questions on them with respect to the vagueness challenge or the evidentiary rulings. Otherwise, I'm happy to rest on the government's brief and simply ask that this court affirm the judgment of the district court with the exclusion of the forfeiture order, which we agree should be vacated on plain error. Let's see if anyone has any questions for you. OK. Thank you, Your Honor. Counsel. I really just want to emphasize one general point again, and that's that maybe a hypothetical about a stronger case would clarify this. And if the trial testimony had been, we knew he had a stash house, then I think, obviously, we could agree that that would completely undermine the theory that the affidavit had in order to establish the nexus to the law. Why would it? I mean, it's not uncommon, I suppose, for a drug dealer to have a stash house where he keeps drugs, but also keeps them in his house. So he doesn't have to go to the stash house every time he has a deal. He may keep a large quantity of the stash house, but then move some into his own home for the daily dealing. I mean, I don't think one is inconsistent with the other. Well, Your Honor, I'm not sure where that comes from. I don't know that to be true. That's not in the affidavit, and I haven't seen that specifically in the case law. So unless that's presented in the affidavit, that in their knowledge and experience, even though we know they have a stash house, we still think that it's going to be in the home for reasons explained. But their knowledge was on the other side of that, though. There's nothing in the affidavit that suggests, or nothing in the record that suggests, that all of the drugs were kept in the stash house, that that was the only place he kept drugs. Well, it's not our burden to rebut that. I'm just saying that the record doesn't say, there's nothing showing that the officers had knowledge that the only place he kept drugs was in his stash house. No, there's certainly not. And that would never be required to negate probable cause to search somebody's house to say that, to prove that literally no evidence could be found there. That's not the standard at all. It's up to the government, the affiant, to establish that nexus. Because it's not enough that they have probable cause to think somebody committed a crime to search their house. We'll indulge you for a minute so I can joust with you a bit. So the big problem you have here, it seems to me, is that you're on plain air. It's a big problem. And that your case is close. Like, even if we take everything you say, it's still close. It's a close call. I agree. Because the things that have been left out that you would like to have in there don't dictate that the magistrate would have denied the search warrant. I think that, and what I'm trying to establish, what I was trying to explain by having, you know, what a stronger case would look like. I think where the plain air and the substantial preliminary showing come out a bit of a wash. Because we only need a substantial preliminary showing is all that's required. And I submit that. But you also have to have things, you know, you have to have an air that's plain. You have to have, you know, something that undermines the public's perception of the proceedings. Sure. And in this case where the things that you add in in your perfect case, if you went and had a Frank's hearing, it's still close. So it doesn't seem to, I mean, at least if you start bouncing down to the third and fourth elements of plain air review, even giving you an air that's plain, you have problems. Well, I disagree. I think I would agree with you that the first hurdle is certainly plainness. But I think if we established that we were plainly entitled to a Frank's hearing, then I think we easily established the third and fourth prongs too. Because the third prong only requires us to show a reasonable probability. And I think that if we showed that there was, we were plainly entitled to a Frank's hearing, that means we plainly established a substantial preliminary showing. I think that alone is enough to say that there's a reasonable probability that at the Frank's hearing we'd be able to actually prove that Frank's violation and that all evidence from the search of the home would be suppressed. In which case, none of these charges could stand. So I think if we get over that second prong hurdle, then, you know, it's smooth sailing from there. All right. Let me see if anyone has anything else. Judge Baldock. Okay. Counsel, thank you very much for your arguments. The case will be submitted and counsel are excused.